UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMY MACARTNEY,<br>      *Plaintiff*,<br><br>      v.<br><br>SEILER LLP,<br>      *Defendant*. | No. 3:23-cv-111 (JAM) |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The plaintiff Amy Macartney and her then-husband hired the defendant Seiler LLP to prepare and file their federal income tax returns. For the tax year 2019, Seiler prepared and filed a joint tax return in December 2020 that claimed a large tax refund of more than $400,000. But the receipt of this refund was delayed because Seiler mistakenly listed the wrong mailing address for the IRS to send the refund.

Indeed, it would be more than a year before the IRS eventually re-sent the refund to the correct address in April 2022. In the meantime, Macartney and her husband were divorcing, and they entered into a separation agreement in June 2021 that gave Macartney's husband the right to receive any tax refunds that arrived after the date of their signing the agreement.

Yet, according to Macartney, when she signed the separation agreement, she thought that the refund had already arrived and that she would benefit in part from the refund as part of the already-existing marital estate. And she claims that the separation agreement did not foreclose her from retaining the benefit of any tax refunds that were received before she signed the agreement.

Therefore, Macartney has filed this lawsuit claiming that Seiler was negligent when it listed the wrong address for the IRS to send the refund. She seeks damages from Seiler for the amount of the refund that she would have retained if the tax refund had arrived on time.

1

Seiler now moves for summary judgment. It does not dispute that it acted negligently by listing the wrong address. Instead, it argues that—because Macartney subsequently signed the separation agreement allowing her husband to retain the refund—Macartney suffered no injury at all and that she cannot show that any injury she suffered was caused by any negligence on Seiler's behalf.

I do not agree. For the reasons set forth below, I conclude that the separation agreement does not preclude Macartney's claim of right to benefit from any tax refunds that should have arrived before the agreement was signed. Moreover, viewing the record as I must in the light most favorable to Macartney, there is otherwise a genuine issue of fact to show that Seiler's negligence proximately caused the injury that Macartney claims. Therefore, I will deny the motion for summary judgment.

## BACKGROUND

As noted above, Macartney has filed this federal diversity lawsuit for professional negligence against Seiler, a tax accounting firm based in California.[1] Macartney and her then-husband—Eric Freidenrich—retained Seiler to prepare and file their income tax returns including their federal income tax return for the calendar year 2019.[2]

---

[1] Doc. #1. For purposes of this motion for summary judgment, the parties have each filed statements of material facts as required under the District of Connecticut's local civil rules. *See* Doc. #32 (Seiler's local rule 56(a)(1) fact statement); Doc. #43 (Macartney's local rule 56(a)(2) fact statement). For those facts alleged by Seiler that Macartney either admits or does not properly deny as required by the Court's local rule, this ruling cites the applicable page and paragraph of Macartney's fact statement reflecting either that the stated fact has been admitted or that it is denied but without citing proper evidentiary support or that there is merely an argumentative denial (e.g., "relevancy") that is not responsive to the fact as stated. To the extent that Macartney's fact statement includes additional material facts that are properly supported by cited and admissible evidence, I accept these additional facts as true in light of my obligation to interpret the record in the light most favorable to the non-moving party and in the absence of any well-stated objection to such additional facts by Seiler in its reply brief.
[2] Doc. #43 at 1 (¶ 1).

In December 2020, Seiler mailed a draft of the 2019 return to Macartney and Freidenrich for their review and signature.[3] According to the return and Seiler's cover note, Macartney and Freidenrich were owed a large income tax refund of nearly $450,000.[4] Both Macartney and Freidenrich hand-signed the return, and then the return was transmitted back to Seiler for Seiler to file it in paper form with the IRS.[5]

On the front page of the return right below Macartney and Freidenrich's names appeared a "home address" for the taxpayers.[6] Rather than using their own home address, Macartney and Freidenrich's practice was to use the mailing address for a company named Regis Management that served as the couple's general financial manager and advisor.[7]

Unfortunately, however, the mailing address that Seiler put on the return was Regis's old office mailing address in Palo Alto, California, rather than its new office address in Menlo Park, California.[8] Seiler used the old mailing address for Regis despite the fact that just a few months earlier Regis told Seiler that it was moving to a new address.[9]

According to Macartney, the result of Seiler's using the wrong mailing address was a long delay before receiving the requested refund from the IRS on the 2019 return. It was not until April 2022—about sixteen months after the return was filed—when Regis ultimately received a refund in the amount of $448,837.46.[10]

---

[3] *Id.* at 3 (¶ 8); Doc. #31-2 at 9 (Macartney deposition testimony that in December 2020 she received a paper copy of the 2019 tax return to review and sign).
[4] Doc. #43 at 4 (¶ 11); Doc. #31-4 (signed federal tax return along with cover note from Seiler advising of the refund amount).
[5] Doc. #43 at 11 (¶18).
[6] Doc. #31-4 at 3.
[7] Doc. #43 at 2 (¶¶ 2-4).
[8] *Id.* at 2 (¶¶ 5-6); Doc. #31-4 (tax return with Palo Alto address).
[9] Doc. #43 at 2 (¶ 7); Doc. #31-5 at 2-3 (Seiler/Regis email exchange re change of address). The record shows that Seiler acknowledged Regis's change-of-address advisory by telling Regis it should make sure to file a change-of-address form with the IRS for its client accounts, but it does not reflect whether Regis did so or whether doing so would have prevented the IRS from sending the tax refund to the wrong address listed on the return.
[10] Doc. #43 at 7 (¶ 24); Doc. #31-6 at 2-3 (email from Regis and copy of IRS refund checked dated April 15, 2022).

In the meantime, Macartney and Freidenrich were in the process of separating and divorcing. Seiler admits that it knew of the couple's potential divorce when it filed their tax return in December 2020.[11]

Later events would make clearer who might benefit from any future tax refund. In June 2021, Macartney and Freidenrich executed a separation agreement to divide their marital property.[12] Article X of the agreement is a "Taxes" provision stating in part that, for any tax returns filed by the couple during the marriage, Freidenrich would not only be fully responsible for any underassessment, interest, or penalties, but also that he would be entitled to receive any tax overpayment or tax refund.[13]

Macartney concedes that, because the tax refund was not actually received until *after* she signed the separation agreement, Article X of the agreement gave Freidenrich the right to retain the full amount of the tax refund.[14] But, according to Macartney, if the tax refund had been received *before* she signed the separation agreement, then it would have been deposited to a Fidelity bank account that held most of the couple's cash holdings and that the couple routinely used for the deposit of tax refunds.[15] The separation agreement in turn provided for Macartney to retain 60% of the couple's joint holdings in the Fidelity bank account.[16]

---

[11] Doc. #12 at 2 (¶ 8) (Seiler's answer stating that "in or around December 2020 Seiler was aware of a potential divorce between Plaintiff and her then husband").
[12] Doc. #31-13 at 22.
[13] *Id.* at 15 ("Art. X. Taxes"). Article X states in relevant part: "The Husband shall be fully responsible for any tax underpayment, assessments, penalties or interest which may result from any joint federal, state or municipal income tax returns filed by the Husband and Wife during the marriage . . . likewise, the Husband shall be entitled to receive any tax overpayment/refund."
[14] The record reflects that when Macartney first learned of the receipt of the refund she contacted Freidenrich to suggest a 50/50 split of the refund. After Freidenrich replied by citing his rights under Article X of the separation agreement, it does not appear that Macartney disputed his right to the entire refund. Doc. #43 at 7-8 (¶¶ 26-30).
[15] *Id.* at 12 (¶¶ 25-26); Doc. #43-1 at 4 (¶ 18).
[16] Doc. #31-13 at 7.

Macartney further claims that she did not know that the refund had not been received before she signed the separation agreement, and that she assumed that the refund would have been received and deposited to the Fidelity account before she signed the separation agreement.[17] And she points to evidence that the wrong address caused a long delay in the receipt of the tax refund: the IRS initially sent the refund in April 2021, but the refund check was returned to the IRS for lack of delivery on May 10, 2021—all before Macartney signed the separation agreement in June 2021.[18]

Therefore, Macartney maintains that it was Seiler's negligence at the outset in listing the wrong address for the IRS to send the refund that ultimately caused the delay in receipt of the tax refund and that caused her to lose out on 60% of the tax refund.[19] She testified that "[i]f that refund check arrived at the right address, it would have been deposited, it would have been split 60/40, the way all of our others [refunds] had been."[20]

Seiler now moves for summary judgment on two grounds. First, as clarified at oral argument, Seiler contends that Macartney did not suffer any injury at all because in the separation agreement she signed away to Freidenrich any claim of right to the tax refund. Second, Seiler contends that its negligence did not otherwise cause the alleged injury that Macartney claims.

---

[17] Doc. #43 at 11-12, 13 (¶¶ 21, 27); Doc. #43-1 at 4 (¶ 18). By contrast, Seiler claims that Macartney knew or should have known that the refund had not been received because her counsel sought and received access to the details of the Fidelity account before the separation agreement was signed. My review of the record suggests that there is a genuine fact issue whether Macartney knew that the tax refund had not been received as of the date when she signed the separation agreement.
[18] Doc. #43 at 12 (¶ 23).
[19] Doc. #1 at 9 (¶ 12).
[20] Doc. #31-2 at 20.

## DISCUSSION

The principles governing review of a motion for summary judgment are well-established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close, contested issues of fact but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (*per curiam*); *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023).[21]

Macartney does not dispute Seiler's claim that California law applies to this action.[22] California law allows a claim for professional negligence if a plaintiff can demonstrate "(1) the existence of the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

For purposes of this motion, Seiler does not dispute the first two elements: that it had a duty of care to Macartney and that it breached that duty by listing the wrong address on the 2019 tax return. Instead, Seiler disputes the last two elements: that there was a causal connection

---

[21] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.
[22] *Compare* Doc. #31-1 at 12-13 *with* Doc. #42 at 6.

between its negligence and the claimed injury and that Macartney suffered any loss or damage resulting from its negligence.

I will first address Seiler's argument that Macartney has suffered no cognizable injury before turning to issues of causation. According to Seiler, Macartney suffered no cognizable injury from the use of the wrong mailing address because she subsequently decided to sign the separation agreement that allowed her husband to retain all future received refunds from tax returns filed during their marriage.

But Seiler's argument overlooks a primary and normative purpose of tort law: to consider the world as it should have been, not only as it is now. Because there is no dispute that the refund did not arrive until after she signed the separation agreement, Macartney does not dispute that her husband had the right to retain the refund, and therefore she has not named her husband as a defendant in this lawsuit. Still, however, Macartney *does* dispute that her husband would have had the right to retain the refund if the refund had arrived—as she claims it would have if not for Seiler's use of the wrong mailing address—before she signed the separation agreement. Thus, even if Macartney does not contest her husband's present right to retain the refund, this does not foreclose her from invoking tort law to seek damages for her claim that the breach of duty by Seiler deprived her of the benefit of a refund that otherwise she would have received.[23]

It would be one thing if her husband's right under the separation agreement to retain the entirety of any tax refunds extended not just to refunds received *after* the date of the separation agreement but also to any refunds received *before* the separation agreement. If that were so, then

---

[23] For this reason, Seiler misplaces its reliance on cases that recognize and give effect to the terms of separation agreements that allow one spouse to the exclusion of the other to receive the benefit of future tax refunds. *See, e.g.*, *DeMatteo v. DeMatteo*, 21 Conn. App. 582 (1990). Because the tax refund was not received until after the separation agreement was signed, Macartney does not dispute her husband's right to receive the tax refund. Instead, she disputes Seiler's right to have negligently caused the late receipt of the tax refund that in turn triggered her husband's right to receive the refund rather than for 60% of the refund to have been retained by her. The cases cited by Seiler have nothing to say about the right of a party like Macartney to seek relief from a third party like Seiler.

7

Seiler would be correct that by signing the separation agreement, Macartney disclaimed any right to retain any refund, regardless when that refund was received.

But at oral argument Seiler disclaimed this "no time limits" interpretation of Article X of the separation agreement. Seiler recognized, for example, that to the extent that the couple may have received tax refunds for many tax years prior to 2019 that had been deposited in past years to the Fidelity account, Article X of the separation agreement did not afford Freidenrich the right to clawback these refund amounts for his own personal benefit. Seiler agreed at oral argument that Freidenrich's right under the separation agreement to retain all of the tax refunds applied only to refunds that were received after the signing of the separation agreement and not to refunds received at earlier times or in earlier years of the couple's marriage.

Therefore, Article X of the separation agreement does not foreclose Macartney's claim that she suffered an injury. It does not give away Macartney's right to claim or retain the benefit of tax refunds that the couple received *before* she signed the separation agreement. Accordingly, Seiler has failed to show that there is no genuine issue of fact to show that Macartney suffered an injury in the first place.

Turning now to the issue of causation, to establish a claim "for professional negligence," a plaintiff must prove, among other elements, "a proximate causal connection between the negligent conduct and the resulting injury." *Paul v. Patton*, 235 Cal. App. 4th 1088, 1095 (2015). "Professional negligence need not be established as the sole cause of the client's loss, but the plaintiff must show by the evidence presented that a result was more likely than not caused by a wrongful act or omission." *Williams v. Wraxall*, 33 Cal. App. 4th 120, 132 (1995), *as modified on denial of reh'g* (Apr. 12, 1995).

Under California law, proximate cause has two components: (1) "cause in fact," or whether the defendant's conduct was a "substantial factor" in bringing about the harm, and (2) "whether as a matter of social policy the defendant should be held legally responsible for the injury." *Kumaraperu v. Feldsted*, 237 Cal. App. 4th 60, 68 (2015). The second component of this test relieves a defendant of liability if the "harm was not a reasonably foreseeable result of their negligent conduct." *Id.* at 69.

As to the first component, Seiler has failed to show that there is no genuine issue of fact about whether its alleged negligence was a cause-in-fact of injury to Macartney. To the contrary, substantial evidence in the record as discussed above reflects that the use of the wrong address caused receipt of the refund to be delayed until after Macartney signed the separation agreement.

As to the second component, Seiler has failed to show that there is no genuine issue of fact about whether the claimed injury to Macartney was reasonably foreseeable to Seiler at the time that it used the wrong mailing address. "Ordinarily, foreseeability is a question of fact for the finder of fact, but it may be decided as a question of law if under the undisputed facts there is no room for a reasonable difference of opinion." *Ibid.*

Here, the record shows that Seiler was aware of impending divorce proceedings at the time that it filed the 2019 tax return with the wrong address. A reasonable jury could conclude that it would be reasonably foreseeable to an experienced financial and tax accountant like Seiler that co-represents the interest of a married couple that ongoing divorce and separation proceedings may lead to shifting financial rights and responsibilities over time. It would be reasonably foreseeable that causing a delay in the couple's receipt of a financial benefit may result in a disproportionate harm to the interests of one member of the couple like Macartney whose rights are shifting over time.

As California law makes clear, "reasonable foreseeability of harm is the very prototype of a question that a jury must pass on in particularizing the standard of conduct in the case before it." *Adams v. City of Fremont*, 68 Cal. App. 4th 243, 298 (1998), *as modified on denial of reh'g* (Jan. 4, 1999). And "the court's task is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 629 (2018).

California has adopted a system of comparative fault which "seeks to distribute tort damages proportionately among all who caused the harm." *DaFonte v. Up-Right, Inc.*, 2 Cal. 4th 593, 595 (1992). Accordingly, Seiler may argue that its culpability is diminished by Macartney's negligence. And it is generally the factfinder's role at trial—not the judge's role at summary judgment—to decide to what extent responsibility should be apportioned among the parties. *See Sparks v. Owens-Illinois, Inc.*, 32 Cal. App. 4th 461, 476 (1995); *Henry v. Superior Ct.*, 160 Cal. App. 4th 440, 461 (2008); Cal. Civ. Prac. Torts § 1:46.

Seiler can also argue to the factfinder that the harm that Macartney suffered was unforeseeable in light of the negligent actions of Macartney and various nonparties to this suit. Here, there are many potentially negligent actions—not just Seiler's use of the wrong address—that may have played a role in Macartney's loss of her portion of the refund. For example, Regis may have failed to register for continued mail forwarding to its new address or failed to file a change of address with the IRS as Seiler suggested. Macartney herself apparently failed to notice the wrong address that appeared on the tax return that she was given to review and sign. Macartney and her counsel had access to the records of transactions for the Fidelity account

before Macartney signed the separation agreement, but it appears that they did not verify that the refund had been received before Macartney signed the separation agreement. Ultimately, it is for a jury to decide on the basis of the totality of the circumstances whether the injury to Macartney was reasonably foreseeable and in light of any negligence by Macartney or others.

Seiler also argues that Macartney's signing of the separation agreement was a superseding and intervening cause of harm to Macartney that broke any inference that Seiler's own negligence caused harm to Macartney. *See Ash v. N. Am. Title Co.*, 223 Cal. App. 4th 1258, 1274 (2014). But, as noted above, Article X of the separation agreement did not foreclose Macartney's claim of right to the benefit of any refund that was received prior to her signing of the separation agreement. Therefore, the signing of the separation agreement did not extinguish Macartney's right to seek damages against a defendant like Seiler whose negligence caused a delay in the receipt of the refund.

Moreover, a superseding cause is sufficient only "if the independent intervening act is highly unusual or extraordinary, not reasonably likely to happen and hence not foreseeable." *Ibid*. But here, for the reasons discussed above, there is a genuine issue of fact to show that it was reasonably foreseeable to an experienced accounting firm like Seiler that future shifting legal obligations due to ongoing divorce and separation proceedings could harm the interests of one member of a couple in the event of a delay in the receipt of a tax refund.

In short, genuine issues of fact remain concerning whether Macartney suffered any injury at all as well as whether Seiler's negligence caused such injury. Accordingly, I will deny Seiler's motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the Court DENIES the defendant's motion for summary

judgment (Doc. #31).

It is so ordered.

Dated at New Haven this 12th day of November 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge